767 So.2d 1049 (2000)
Patrick GRAVES a/k/a Patrick Alexander Graves, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-00569-COA.
Court of Appeals of Mississippi.
September 19, 2000.
*1051 Daniel DeWayne Ware, Magee, Attorney for Appellant.
Office of the Attorney General by Jean Smith Vaughan, Attorney for Appellee.
BEFORE McMILLIN, C.J., IRVING, MOORE, AND PAYNE, JJ.
PAYNE, J., for the Court:

PROCEDURAL HISTORY
¶ 1. This is an appeal from the Simpson County Circuit Court wherein on December 7, 1998, a jury convicted Patrick Graves of transfer of cocaine within fifteen hundred feet of a church in violation of Miss.Code Ann. § 41-29-142 (Rev.1993). Graves was sentenced to serve a term of ten years in the custody of the Mississippi Department of Corrections.
¶ 2. Graves made a motion for a directed verdict at the end of the State's case, which the judge denied. Graves's motion for a new trial or, in the alternative, an acquittal was also denied. Feeling aggrieved, Graves now appeals to this Court. Finding there was a discovery violation, we reverse and remand.

FACTS
¶ 3. On February 27, 1998, undercover agents Sandy Townsend and Henry Brown met a confidential informant for a pre-buy meeting to purchase illegal drugs. Townsend was given a body wire, and Brown was given a cassette recorder, both to provide feedback to the other agents who would monitor the buy. As well, Townsend and Brown were given five marked twenty dollars bills to purchase the drugs. Townsend, Brown and the confidential informant cruised the Goodwater Community of Magee, Mississippi, eventually stopping their car to pick up Graves. Graves gave Townsend seven rocks of what proved to be crack cocaine in exchange for the one hundred dollars.
¶ 4. At the trial on this matter, the recording from the body wire was introduced into evidence (the micro cassette recorder malfunctioned and did not record), the substance sold was positively identified as crack cocaine, and Townsend and Brown positively identified Graves as the person who sold them the drugs. Based on this testimony and evidence Graves was convicted.

ANALYSIS OF THE ISSUES PRESENTED

STANDARD OF REVIEW
¶ 5. We cite those issues Patrick Graves raises in his brief for our review:
I. THE CIRCUIT COURT ERRED IN NOT GRANTING GRAVES'S MOTION FOR A DIRECTED VERDICT ALLOWING THE STATE TO VIOLATE HIS CONSTITUTIONAL RIGHTS TO THE CONFRONTATION CLAUSE UNDER BOTH THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS;
II. THE CIRCUIT COURT ERRED IN OVERRULING GRAVES'S OBJECTION TO THE STATE'S MOTION FOR ALLOWING DRUGS TO BE PLACED INTO EVIDENCE;
III. THE VERDICT AGAINST GRAVES WAS NOT SUFFICIENTLY SUPPORTED BY THE EVIDENCE.
¶ 6. At the outset, we first examine our standards of review for each of the issues Graves raises with this appeal. We note that with his first and third issues, Graves essentially argues that the judge's failure to require disclosure of the confidential informant's identity was a discovery violation. Therefore, we approach these issues as such and first examine our standard for reviewing claims of discovery violations.
Our standard for review is whether the trial court abused its discretion in its *1052 decision. This Court must decide whether the ... court could have entered the order which it did. Under this standard, this Court will affirm unless there is a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors.
Caracci v. International Paper Co., 699 So.2d 546 (¶ 16) (Miss.1997) (citations omitted). Finding the trial court abused its discretion in its decision not to order the release of the confidential informant's identification, we must reverse on this issue and remand for a new trial.
¶ 7. With Graves's second issue, he argues that the drugs collected from the crime were improperly placed into evidence because the chain of custody was not properly developed. "Matters regarding the chain of custody of evidence are largely left to the discretion of the trial judge, and `unless this judicial discretion has been so abused as to be prejudicial to the defendant, this Court will not reverse the ruling of the trial court.'" Jones v. State, 740 So.2d 904 (¶ 35) (Miss.1999) (citations omitted). We disagree with Graves on this issue and find that the trial court did not abuse its discretion in admitting the cocaine into evidence.
DISCUSSION OF THE ISSUES
I. THE CIRCUIT COURT ERRED IN NOT GRANTING GRAVES'S MOTION FOR A DIRECTED VERDICT ALLOWING THE STATE TO VIOLATE HIS CONSTITUTIONAL RIGHTS TO THE CONFRONTATION CLAUSE UNDER BOTH THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS;
III. THE VERDICT AGAINST GRAVES WAS NOT SUFFICIENTLY SUPPORTED BY THE EVIDENCE.
¶ 8. As previously stated, with his first and third issues Graves essentially argues that the trial court's refusal to require disclosure of the confidential informant's identity was a discovery violation that prevented him from receiving a fair trial. Thus, we embark on a exposition of what constitutes a discovery violation, and if such violation is found, what steps are necessary to remedy such a mistake.
¶ 9. The discovery violation Graves alleged prejudiced him was the judge's failure to require the prosecution to disclose the identity of the confidential informant. We first examine when such disclosure of identity is required, as described in Uniform Circuit and County Court Rule 9.04(B)(2):
Disclosure of an informant's identity shall not be required unless the confidential informant is to be produced at a hearing or trial or a failure to disclose his/her identity will infringe the constitutional rights of the accused or unless the informant was or depicts himself/herself as an eyewitness to the event or events constituting the charge against the defendant.
¶ 10. As well, case law has interpreted this provision to require disclosure if the informant is a material witness:
Ordinarily, disclosure of the identity of an informer, who is not a material witness to the guilt or innocence of the accused, is within the sound discretion of the trial court. On the other hand, where the informer is an actual participant in the alleged crime, the accused is entitled to know who he is.
Read v. State, 430 So.2d 832, 836 (Miss. 1983) (citations omitted). See also Sims v. State, 313 So.2d 27, 29 (Miss.1975).
¶ 11. In the present case, the confidential informant was an actual participant in the drug buy. The informant drove her own car carrying both undercover agents, eventually picking up Graves and using her car to provide the cover under which the drug sale was transacted. According to Townsend's testimony, the informant knew Graves and introduced Townsend and Brown to Graves once Graves got into *1053 the car. Thus, the informant overheard the transaction taking place, knew the identity of the seller, knew where in the neighborhood the buy took place, and by virtue of her presence there, basically knew the same information the agents knew. Yet, this confidential informant was not called as a witness nor disclosed to the defense. Without the State's disclosing the identity of this informant, Graves was not able to question her as to her recollection of the events, which possibly harmed Graves's ability to defend himself. Uniform Circuit and County Court Rule 9.04(I) states:
If at any time prior to trial it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, or enter such other order as it deems just under the circumstances.
¶ 12. The trial judge stated that Graves failed to request the identity of the confidential informant; otherwise, he would have required such identity be disclosed. To the contrary, Graves argues that the State did not sufficiently comply with his motion for discovery, which requested in part for the State to produce "[n]ames and addresses of all persons who may have some knowledge of facts of the present case ..." and "[f]ull names and addresses of all persons who have given information to the prosecuting attorney, his staff, or law enforcement officers relating to the arrest of the defendant and the charges against him." Graves also motioned for a directed verdict arguing that the State's repeated reference to a confidential informant prejudiced the defense and warranted a directed verdict. Graves made the appropriate discovery request, and we find that the court erred in not requiring the prosecution to disclose the identity of the informant, as requested in the discovery motion.
¶ 13. The State called as witnesses Jason Alexis, a forensic scientist at the Mississippi Crime Laboratory who testified the substance sold to the undercover agents was crack cocaine; Richard Bradley, who worked with the Magee Police Department as a special agent with the Bureau of Narcotics and was at the pre-buy meeting and delivered the evidence to the crime lab; and Sandy Townsend and Henry Brown, both of whom worked with the Mississippi Bureau of Narcotics and acted undercover in this drug buy. The defense called Patrick Graves as their only witness, who denied that he was the person who sold the drugs to the undercover agents. As previously stated in detail, the confidential informant was a very active participant, only differing from the agents' roles in that she did not actually give Graves the money to transact the buy. According to the rules stated above, her name should have been disclosed.
¶ 14. An additional way in which Graves possibly was harmed in the non-disclosure of the informant's identity lies in Graves's defense that he was not the person who sold the drugs to Townsend and Brown. Brown testified he thought Graves was 6'2" tall and weighed approximately 270 pounds. Townsend testified she thought he was 5'9" to 6'0" and weighed 210 to 230 pounds. Though Brown attributes the discrepancy to Townsend's viewing Graves as he sat in the car, thereby negating her ability to accurately evaluate his physical size, the discrepancy, nonetheless, is vast and could raise doubt at to Graves's identity. Contrarily, the confidential informant knew Graves and was personally knowledgeable as to Graves's physical appearance and could have shed much light on the matter of his identity. As Graves's major argument is that he was not the participant in the drug buy, the confidential informant should have been disclosed to Graves to allow him to examine the informant's testimony.
Lower courts should be cautious in either dismissing a suit or pleadings or *1054 refusing to permit testimony.... The reason for this is obvious. Courts are courts of justice not of form. The parties should not be penalized for any procedural failure that may be handled without doing violence to court procedures.
Caracci, 699 So.2d 546 at (¶ 17) (citations omitted).
¶ 15. The Mississippi Supreme Court addressed a similar discovery violation in Cousan v. State, 543 So.2d 177 (Miss.1989). In that case, the defendant was convicted in the Harrison County Circuit Court after he was caught selling cocaine to an undercover officer. The supreme court reversed Cousan's conviction because the State committed a discovery violation in failing to turn over the cassette tape recording taken from the body wire microphone the undercover agent was wearing at the time of the transaction. The State argued that they did not produce the tape because the transmission recorded on the tape was "broken up" and that the tape was essentially "useless." Cousan, 543 So.2d at 179.
¶ 16. The supreme court concluded that Rule 4.06 of the Uniform Criminal Rules of Circuit Court practice required that this tape be produced in response to the defendant's request for a copy of any recorded statement the defendant may have made to an officer. Id. The court stated that the defense, not the prosecutor nor the judge, was to determine what information was or was not exculpatory. Id. Applying this rule to the case sub judice, Graves should have been given the information concerning the confidential informant's identity to make his own determination as to whether or not he wanted to use the informant's testimony. The trial judge erred in not permitting this, and according to Cousan we must reverse and remand for a new trial.

II. THE CIRCUIT COURT ERRED IN OVERRULING GRAVES'S OBJECTION TO THE STATE'S MOTION FOR ALLOWING DRUGS TO BE PLACED INTO EVIDENCE.
¶ 17. Though we have stated that this cause must be reversed and remanded for a new trial, we will discuss Graves's other issue briefly. Graves objected to the cocaine's being entered into evidence, namely because he claims there was a defect in the chain of custody. As described in the record, the State offered the cocaine into evidence at which time Graves objected, claiming a proper predicate had not been laid. The State refreshed the court's memory that Rick Bradley, a narcotics agent with the Magee Police Department, previously testified that he took the cocaine to the crime lab. At this point, the court corrected itself for the oversight and accepted the cocaine into evidence. After such admission, Graves failed to voice a new or continuing objection, failing to preserve his right to appeal this issue. "The failure to make a contemporaneous objection bars [defendant] from raising this issue for the first time on appeal. `A trial judge will not be found in error on a matter not presented to him for decision.'" Smith v. State, 724 So.2d 280 (¶ 168) (Miss.1998) (citations omitted).
¶ 18. Aside from the procedural bar and looking to the merits of Graves's claim, James Alexis, a forensic scientist from the Mississippi Crime Lab, testified that he examined the substance and found it to be cocaine. Alexis stated he had the cocaine in his possession on June 23, 1998, and that no one else at the crime lab had access to the cocaine. Officer Rick Bradley of the Magee Police Department testified that the bag of cocaine contained his initials that he placed on the bag when he sealed it, that it had Sandy Townsend's initials on it that she wrote in his presence, and that it was in substantially the same condition that it was at the time Townsend delivered it to him and he delivered it to the crime lab. Townsend testified that the bag contained her initials, that she saw Bradley place his initials on the same bag, that she gave the drugs to Bradley at the post buy location, and that *1055 the package did not appear to have been tampered with. The only possible discrepancy lies in Alexis's testimony on cross-examination that he was handed the cocaine by another person who worked in the lab. This conflicts with Alexis's previous testimony on direct that no one other than himself had access to the evidence when it was at the crime lab. Thus, a question exists as to who Bradley handed the cocaine to at the lab between the time it appeared at the lab and the time Alexis retrieved it for testing.
[T]he test for the continuous possession [i.e., "chain of custody"] of evidence is whether or not there is any indication or reasonable inference of probable tampering with the evidence or substitution of the evidence. "In such matters, the presumption of regularity supports the official acts of public officers," and the burden to produce evidence of a broken chain of custody (i.e., tampering) is on the defendant.
Hemphill v. State, 566 So.2d 207, 208 (Miss.1990) (citations omitted).
¶ 19. Though the chain of custody has not been set forth in perfect detail with the testimony in this case, it is only minor that Alexis contradicts himself in his testimony as to whether or not he or another at the crime lab actually took the cocaine from Bradley. According to the Hemphill rule stated above, this reasonably does not infer tampering as either way, someone at the crime lab was given the evidence. Beyond the procedural bar of this issue since Graves did not object contemporaneously, Graves has not sufficiently met his burden to show that the chain was broken. We affirm on this issue.

CONCLUSION
¶ 20. The Simpson County Circuit Court erred in failing to require the identity of the confidential informant be disclosed. As such, Graves did not receive a fair trial and we reverse and remand for a new trial in accordance with this opinion.
¶ 21. THE JUDGMENT OF THE SIMPSON COUNTY CIRCUIT COURT IS REVERSED AND REMANDED FOR A NEW TRIAL. COSTS OF THIS APPEAL ARE TAXED TO SIMPSON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, MYERS, AND THOMAS, JJ., CONCUR.